LE ROY MOORE, Respondent, *v.* ISIDOR LEVENTHAL et al., Doing Business under the Name of VETERAN AUTO PARTS CO., Appellants.

Argued January 9, 1952; decided March 13, 1952.

*Joseph F. Soviero, Jr.,* for appellants. I. There was error in permitting the examination of the police officer with respect to the contents of a book not in evidence, and in excluding the police blotter report. (*Cellamare* v. *Third Ave. Tr. Corp.,* 273 App. Div. 260; *Crawford* v. *Nilan,* 289 N. Y. 444; *Ferris* v. *Sterling,* 214 N. Y. 249.) II. The trial court erred in restricting the cross-examination of plaintiff upon his criminal record and presentation of proof with respect thereto. (*Derrick* v. *Wallace,* 217 N. Y. 520.) III. Plaintiff was guilty of contributory negligence as a matter of law.

*Frank B. Gass* and *Preston H. Mayle* for respondent. I. The police blotter was properly excluded from evidence. (*Johnson* v. *Lutz,* 253 N. Y. 124; *Crawford* v. *Nilan,* 289 N. Y. 444; *Ellicott* v. *Pearl,* 10 Pet. [U. S.] 412.) II. The trial court properly excluded the record of convictions of plaintiff. (*Derrick* v. *Wallace,* 217 N. Y. 520.) III. The verdict was a proper one and should not be disturbed. (*Miueli* v. *New York & Queens Co. Ry. Co.,* 136 App. Div. 373; *Sawalsky* v. *Pennsylvania R. R. Co.,* 39 App. Div. 661; *Hallahan* v. *New York, L. E. & W. R. R. Co.,* 102 N. Y. 194.)

LEWIS, J. The automobile traffic accident which gave rise to this action occurred at the intersection of Union Avenue and Boston Post Road in the borough of The Bronx, New York City. At that intersection, where the flow of traffic is controlled by traffic control signals, the plaintiff was struck and injured by a truck owned by the defendant company and then operated by the defendant Leventhal.

The plaintiff testified that, while crossing from the east to the west side of the Post Road, a short distance north of its intersection by Union Avenue, he was struck by the defendant's northbound truck at a time when traffic signals were red for vehicles moving north and south on the Post Road. At that time, according to the plaintiff and one of his witnesses, all north-

bound traffic, except the defendant's truck, was stopped. The plaintiff's evidence bearing upon traffic conditions at the time and place of the accident was denied by the defendant Leventhal who testified that at the time he passed northbound through the intersection the traffic lights were green for vehicles moving north and south on the Post Road.

The decisive issue of fact thus created was supported by substantial evidence and was resolved in plaintiff's favor by a jury verdict at Trial Term. As the judgment entered thereupon was thereafter affirmed at the Appellate Division, one Justice dissenting, we must affirm the judgment unless evidentiary rulings, challenged by the defendants-appellants, are such as to require reversal and a new trial.

The plaintiff testified that, when he stopped at the east curb of the Post Road and was about to cross to the west side, he looked at the traffic light and observed that it was green for his crossing; that the traffic light was then red against north and south traffic on the Post Road and that such traffic had then stopped. Upon this item of proof plaintiff's testimony was corroborated by a pedestrian who, like the plaintiff, was standing on the east side of the Post Road near the intersection waiting for the green light to permit his crossing.

In opposition to plaintiff's evidence upon this important phase of the case the defendants called the police officer who had responded to a call sent out when plaintiff was injured and had reached the site of the accident before the plaintiff was removed by ambulance. At that time and place, when plaintiff was conscious, the police officer questioned him in detail as to how the accident happened with special reference to what plaintiff observed as to the traffic control signals. The officer's testimony was as follows:

" Q. What did he [plaintiff] tell you about the condition of the traffic lights? A. He told me that traffic was going north and south, the condition, that is, the lights were working north and south, *traffic was moving north and south on Boston Road.*

" Q. When he crossed the street? A. That is right.

" Q. And did you so put down in your report, *in the official police report you filed? A. That is right, I did.*

" Q. Is that a copy of your report? A. That is.

" Mr. Christensen [attorney for the defendants] : May we have this marked for identification?

" (Two slips of paper marked Defendants' Exhibit C for identification.) " (Emphasis supplied.)

Upon cross-examination of this witness counsel for the plaintiff questioned him concerning a little " black book " ordinarily carried by policemen in which are noted the facts of accidents under investigation. The witness was permitted, over objection by the defendants, to state that there was nothing in his black book with regard to any statement by the plaintiff at the time of the accident, nor was there any note relating to the condition of traffic lights or the movement of traffic on the Post Road when the plaintiff was injured. Plaintiff's counsel also adduced from the police officer the fact that one month before the trial he had been unable to recall any of the conversation had with the plaintiff at the time of the accident. Obviously such cross-examination was designed to implant in the minds of the jury the belief that the police officer's testimony, bearing upon admissions made to him by the plaintiff at the time of the accident as to the condition of the traffic lights and of traffic north and south on the Post Road, was the result of recent fabrication. To overcome the inference of recent fabrication, the defendants endeavored on redirect examination — by questions directed to the police officer and by offering in evidence the police report filed by him — to show the contents of the police report. That report — which had been previously marked for identification — contained a notation consistent with the police officer's recital on direct examination of the statement, made to him by the plaintiff, that at the time and place of the accident traffic was moving north and south. On plaintiff's objection the trial court excluded from evidence for the jury's consideration testimony by the police officer as to the contents of the report he had filed and refused to receive the report itself in evidence.

In the circumstances disclosed by this record we think the rejection of the evidence last mentioned above — which was consistent with and supported the police officer's direct testimony and was offered to overcome the inference that his direct testimony had been the product of recent fabrication — was reversible error. " The rule is that where the testimony of a witness is assailed as a recent fabrication, it may be confirmed by proof

of declarations of the same tenor before the motive to falsify existed. (*People* v. *Katz*, 209 N. Y. 311, 337; *Matter of Hesdra*, 119 N. Y. 615.) '' (*Ferris* v. *Sterling*, 214 N. Y. 249, 254.)

As the error mentioned above calls for a new trial of this case, we mention another evidentiary ruling which, in our view, was properly challenged by the defendants. We have seen that sharp issues of fact developed on the trial as to whether — as claimed by the plaintiff — the color of the controlling traffic light at the time and place of the accident was favorable to plaintiff's crossing the Post Road from east to west; or whether — as claimed by the defendants — traffic on the Post Road was then moving north and south. Upon that controverted phase of the case the plaintiff gave testimony which, if believed by the jury, afforded substantial support for his position. As the plaintiff's credibility thus became an important factor, counsel for the defendants, in the course of cross-examination, inquired of the plaintiff whether he had ever been convicted of a crime. The plaintiff answered in the affirmative. Thereafter, when defendants' counsel pursued that line of cross-examination and inquired of plaintiff whether on a given date he had been convicted of a specified crime, plaintiff's counsel objected '' on the ground he [plaintiff] was asked if he was convicted of a crime and his answer was yes, and that any other questions do not go against his credibility.'' That objection was sustained by the court. At a later point in the cross-examination, when plaintiff was asked whether he had ever been convicted of picking pockets, the court sustained the objection on the ground that '' He [plaintiff] hasn't denied that he was convicted on several occasions.''

We do not think an admission by a witness under cross-examination that he has been convicted of a crime serves to deprive the cross-examiner of the right to show the conviction. The scope of such inquiry, as defined by section 350 of the Civil Practice Act, is not so limited: '' A person who has been convicted of a crime is, notwithstanding, a competent witness in an action or special proceeding; but the conviction may be proved, for the purpose of affecting the weight of his testimony, either by the record, or by his cross-examination, upon which he must answer any question relevant to that inquiry; and the party cross-examining him is not concluded by his answer to such a

question.'' (See, also, *Derrick* v. *Wallace*, 217 N. Y. 520, 525.) The Legislature has also prescribed the method by which a conviction may be proved. (See Code Crim. Pro., §§ 482-a, 724, 746.)

The judgments should be reversed and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.